IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GOODALL OIL COMPANY and
MICHAEL RYAN,

                         Plaintiff,

    v.

PILOT CORPORATION and PILOT TRAVEL
CENTERS LLC d/b/a PILOT FLYING J,

                         Defendants.

OPINION and ORDER

19-cv-428-jdp

---

Plaintiff Goodall Oil Company alleges that from 1989 to 2019, it had an agreement with defendant Pilot Corporation to haul fuel to one of Pilot's gas stations. According to the complaint, the relationship began to suffer when employees of defendant Pilot Travel Centers (PTC), which is owned in part by Pilot, began spreading false rumors that plaintiff Michael Ryan (Goodall's president) was going to retire and that PTC would take over hauling the gas. In May 2019, Pilot terminated its hauling agreement with Goodall and gave Goodall's hauling rights to PTC.

Plaintiffs assert five claims in their complaint, all based on state law: (1) breach of contract (against Pilot); (2) breach of the implied duty of good faith and fair dealing (against Pilot); (3) intentional interference with contractual relations (against PTC); (4) intentional interference with prospective contractual relations (against PTC); and (5) defamation (against PTC). For the breach of contract claim, plaintiffs request specific performance of the hauling agreement and monetary damages. Plaintiffs also request punitive and compensatory damages on the defamation and intentional interference claims. The court has jurisdiction over the case because plaintiffs allege that they are citizens of Wisconsin and Virginia and that defendants

are citizens of Tennessee and Delaware and because it is reasonable to infer that more than $75,000 is in controversy. *See* 28 U.S.C. § 1332 (federal court may exercise jurisdiction when there is diversity of citizenship between the plaintiffs and defendants and the amount in controversy is more than $75,000).

Defendants move to dismiss some of plaintiffs' claims and requests for relief under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Dkt. 10. Specifically, defendants move to dismiss: (1) the breach of the implied duty of good faith and fair dealing claim; (2) the intentional interference with prospective contractual relations claim; (3) the request for specific performance for the breach of contract claim; and (4) the request for punitive damages for the defamation and intentional interference claims. Defendants do not challenge the breach of contract claim, the intentional interference with contractual relations claim, the defamation claim, or plaintiffs' request for compensatory damages.

The court will deny defendants' motion. Plaintiffs are entitled to proceed on theories of both breach of contract and breach of the duty of good faith and fair dealing at the same time. And Goodall has plausibly alleged that defendants intentionally interfered with two prospective contracts. It would be premature at the pleading stage to bar plaintiffs from seeking the remedies of specific performance and punitive damages. Plaintiffs haven't pleaded facts that would preclude either type of relief.

ALLEGATIONS OF FACT

The court draws the following factual allegations from plaintiffs' amended complaint, Dkt. 8, and the court accepts these factual allegations as true when deciding defendants' motion to dismiss. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1086 (7th Cir. 2016).

In 1989, Goodall sold its rights to a gasoline service station to Pilot. As part of Pilot's consideration, Pilot gave Goodall the right to haul fuel to the gas station. This 1989 agreement between Goodall and Pilot did not specify when Goodall's hauling rights terminated.

Michael Ryan became president of Goodall in 2013. Shortly after, Ryan heard rumors from Goodall truck drivers that PTC's managers told PTC truck drivers that PTC was going to take over hauling fuel to the service station. These rumors persisted through 2018.

In 2019, new rumors began circulating from PTC that Michael Ryan had cancer and was going to end Goodall's business. Because of these rumors, Goodall contacted PTC to determine whether Pilot had interest in purchasing Goodall's hauling rights. When Goodall never received an offer from Pilot, Goodall began negotiating with Petro Tech Hauling and Manito Transit for the sale of the hauling rights. Both of these two businesses served as backup carriers for Goodall. Goodall notified PTC of the ongoing negotiations with other fuel transporters and again requested that Pilot make an offer for the hauling rights.

Three days after Goodall notified PTC of the ongoing negotiations, Manito Transit contacted Goodall to end the negotiations because the sale was "too complicated." Later that same day, PTC informed Goodall that there was a 2004 carrier hauling agreement, and PTC said that it would exercise its right to terminate Goodall's hauling rights under that agreement. Roughly one week later, Petro Tech Hauling notified Goodall that it would not make an offer

for the hauling rights because of the anticipated difficulty of the transaction, based on the rumors involving PTC.

In May 2019, PTC took over hauling fuel to the gas station. Hauling fuel to the station was Goodall's only business, so Goodall ceased operations.

ANALYSIS

Defendants move to dismiss some of Goodall's claims for failure to state a claim. (Because the parties do not distinguish between the two plaintiffs, the court will refer to plaintiffs collectively as "Goodall" except where noted.) The question under Federal Rule of Civil Procedure 12(b)(6) is "simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Plaintiffs must give defendants "fair notice of what the . . . claim is and the grounds upon which it rests" and include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

**A. Implied duty of good faith and fair dealing**

Wisconsin law recognizes that every contract contains an implied duty of good faith and fair dealing. *Home Valu, Inc. v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 965 (7th Cir. 2000). This duty is meant to "give the parties what they would have stipulated for" had the parties foreseen all future problems of performance. *Id.* Pilot seeks dismissal of this claim on two grounds: (1) the implied duty is not a separate, independent cause of action from a breach of contract claim; and (2) Goodall's allegations do not support a claim for breach of the implied duty.

for the hauling rights because of the anticipated difficulty of the transaction, based on the rumors involving PTC.

In May 2019, PTC took over hauling fuel to the gas station. Hauling fuel to the station was Goodall's only business, so Goodall ceased operations.

ANALYSIS

Defendants move to dismiss some of Goodall's claims for failure to state a claim. (Because the parties do not distinguish between the two plaintiffs, the court will refer to plaintiffs collectively as "Goodall" except where noted.) The question under Federal Rule of Civil Procedure 12(b)(6) is "simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Plaintiffs must give defendants "fair notice of what the . . . claim is and the grounds upon which it rests" and include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

**A. Implied duty of good faith and fair dealing**

Wisconsin law recognizes that every contract contains an implied duty of good faith and fair dealing. *Home Valu, Inc. v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 965 (7th Cir. 2000). This duty is meant to "give the parties what they would have stipulated for" had the parties foreseen all future problems of performance. *Id.* Pilot seeks dismissal of this claim on two grounds: (1) the implied duty is not a separate, independent cause of action from a breach of contract claim; and (2) Goodall's allegations do not support a claim for breach of the implied duty.

Pilot is correct that a breach of the duty of good faith is not a separate claim from breach of contract. Rather, it's simply a legal theory related to a breach of contract. *See Home Valu*, 213 F.3d at 966; *Tilstra v. Bou-Matic, LLC*, 1 F. Supp. 3d 900, 910 (W.D. Wis. 2014). A plaintiff need not plead legal theories in its complaint, *Tilstra*, 1 F. Supp. 3d at 910, but that doesn't mean that Pilot is entitled to "dismiss" the theory from the complaint.

Pilot says that Goodall's allegations are inconsistent with a breach of the duty of good faith because Goodall's theory is that Pilot breached the express terms of the 1989 contract. But Federal Rule of Civil Procedure 8(d)(2) and (3) allow a plaintiff to plead claims in the alternative, even if the claims are inconsistent. *See Blanchard & Assocs. v. Lupin Pharm., Inc.*, 900 F.3d 917, 921 (7th Cir. 2018); *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1017 (W.D. Wis. 2008). It would be premature to bar Goodall from contending that there was a breach of the duty of good faith. Of course, if Goodall proves a breach of an express term of the contract, Goodall cannot recover under the duty of good faith for the same breach. *See Home Valu*, 213 F.3d at 966.

**B. Tortious interference with prospective contractual relations**

To state a claim for tortious interference with a prospective contract under Wisconsin law, a plaintiff must allege that: "(1) an actual or prospective contract existed between the plaintiff and a third party; (2) the defendant interfered with that contract or prospective contract; (3) the interference was intentional; (4) the interference caused the plaintiff to sustain damages; and (5) the defendant was not justified or privileged to interfere." *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999) (citing *Duct-O-Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th Cir.1994)). To satisfy the first element, plaintiffs must demonstrate that a prospective contract is "sufficiently certain, concrete and definite." *See Love v. Med. Coll.*

*of Wis.*, 371 F. Supp. 3d 489, 497 (E.D. Wis. 2016) (quoting *Shank*, 192 F.3d at 689). Although plaintiffs must produce sufficient evidence of a prospective contract at summary judgment or trial, plaintiffs "must only plausibly allege a prospective contract at the motion to dismiss phase." *Stucchi USA, Inc. v. Hyquip, Inc.*, No. 09-CV-732, 2010 U.S. Dist. LEXIS 76926, at *17 (E.D. Wis. July 28, 2010).

In this case, Goodall alleges that Manito Transit and Petro Tech Hauling served as backup carriers for Goodall's hauling, that Goodall actively negotiated with Manito Transit and Petro Tech Hauling for the sale of hauling rights, that Goodall notified PTC of the negotiations, and that Manito Transit and Petro Tech Hauling ended negotiations because of PTC's actions and rumors. These allegations provide PTC with notice of the prospective contract (sale of hauling rights), of the third parties (Manito Transit and Petro Tech Hauling), and the interference (direct contact and rumors). Goodall has provided enough details about the prospective contracts to present a story that holds together and provide fair notice to PTC of the claim and the grounds upon which it rests. So, Goodall plausibly alleged a prospective contractual relationship with Manito Transit and Petro Tech Hauling. *See Swanson*, 614 F.3d at 404.

PTC contends that a party cannot plead a prospective contractual relationship unless the plaintiff received an offer from the third party, but PTC cites no authority for that view. There are multiple cases in which courts have allowed claims for tortious interference with a prospective contract to proceed even when there was no offer on the table. *See, e.g., Love*, 371 F. Supp. 3d at 497 (parties were "communicat[ing] extensively . . . about prospective employment"); *Quad/Graphics, Inc. v. One2One Commc'ns LLC*, No. 09-cv-99-jps, 2012 WL 2370681, at *8 (E.D. Wis. June 21, 2012) (third parties gave plaintiff "requests for proposals");

6

*I.E.A., Inc. v. Niagara Cooler, Inc.*, 2009 WI App 158, ¶ 31, 321 Wis. 2d 748, 776 N.W.2d 100 (nonprecedential) (the parties were "in negotiations"). Goodall has provided enough details to plausibly allege prospective contractual relations with Manito Transit and Petro Tech Hauling.

**C. Relief sought**

    **1. Specific performance**

Pilot contends that the court should dismiss Goodall's request for specific performance of the contract because Goodall did not allege facts that suggest that Goodall suffered an irreparable injury for which monetary damages are inadequate. But it is questionable whether a complaint must include facts that support a request for relief. Rule 8(a)(3) requires that a claim contain "a demand for the relief sought," but Rule 54(c) says that a court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The court of appeals has held that Rule 8(a)(3) must be read in conjunction with Rule 54(c), *e.g.*, *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002); *Old Republic Ins. Co. v. Emp'rs Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998), which undermines Pilot's contention that a court may review a request for relief at the pleading stage to determine whether it is sufficiently plausible. Pilot doesn't cite any cases in which a court "dismissed" a request for specific performance at the pleading stage.

Pilot also contends that Goodall's allegations conclusively show that Goodall has adequate legal remedies. Specifically, Pilot says that Goodall's negotiations to sell the hauling rights suggest a market value for the hauling rights, and that Goodall stated that the "hauling rights have economic value." So, the argument goes, Goodall should be able to quantify its loss based on its long history of hauling. But just because Goodall suffered some quantifiable economic injury, it doesn't follow that money damages are adequate. Goodall alleges that it

7

went out of business as a result of the alleged breach of contract. The loss of its future profits for an indefinite period may well be impossible to quantify. So Goodall may be able to eventually prove that monetary damages are inadequate.

2. **Punitive damages**

PTC contends that the court should dismiss plaintiffs' request for punitive damages under the tortious interference claims and the defamation claim because plaintiffs failed to allege facts that satisfy the "complicity rule" for punitive damages. The complicity rule provides that:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal or a managerial agent authorized the doing and the manner of the act, or (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act.

*Kolbe & Kolbe Millwork, Co. v. Manson Ins. Agency, Inc.*, 983 F. Supp. 2d 1035, 1050 (W.D. Wis. 2013) (citing Restatement (Second) of Torts § 909). PTC contends that plaintiffs did not plead any facts that suggest that defendants' managers ordered, authorized, or ratified the alleged rumors spread by PTCs' employees. Because those rumors are the basis of Goodall's tort claims, PTC seeks dismissal of Goodall's request for punitive damages.

As with the question of pleading specific performance, this circuit has not decided whether a party must plead punitive damages in the complaint. "Rule 54(c) contemplates an award of punitive damages if the party deserves such relief— whether or not a claim for punitive damages appears in the complaint." *Soltys v. Costello*, 520 F.3d 737, 742 (7th Cir. 2008). This suggests that it would be premature to dismiss a request for punitive damages at the pleading stage.

But even if Rule 8 applies to requests for punitive damages, Goodall's allegations are sufficient. Plaintiffs allege that PTC's employees spread various rumors, including rumors that Goodall was going out of business and that Michael Ryan had cancer. Plaintiffs also allege that PTC's managers spread these rumors to PTC employees. Both sides assume that a manager qualifies as a "managerial agent" within the meaning of Restatement § 909, so the court will make the same assumption.

Pilot says that Goodall's allegations aren't plausible because Goodall didn't identify specific managers or provide details about how the rumors started. But "Rule 8 does not demand that a plaintiff prove his case at the outset of the litigation, nor does it demand that a plaintiff come to court ready to plead facts . . . that he has no way of knowing prior to discovery." *Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013). Without discovery, it is impossible for Goodall to determine these details. Again, plaintiffs have alleged enough detail to present a plausible story that PTC managers authorized, ratified, or approved of their employees' conduct.

PTC relies on *Kolbe & Kolbe Millwork, Co. v. Manson Ins. Agency, Inc.*, 983 F. Supp. 2d 1035 (W.D. Wis. 2013), to support a contrary conclusion, but that case isn't instructive. The allegations at issue in *Kolbe* showed that the party that allegedly committed the tortious conduct did so outside the scope of its agency relationship with the defendant. *Kolbe*, 983 F. Supp. 2d at 1050. In other words, the complaint conclusively showed that the plaintiff couldn't meet the standard for punitive damages. Because the facts alleged in this case could support a request for punitive damages, the court will not dismiss the request.

ORDER

IT IS ORDERED that defendants' motion to dismiss, Dkt. 10, is DENIED.

Entered October 16, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge